In separate trials in 1978, Bobby Joe Hope was convicted for assault with intent to murder and murder in the first degree. On appeal, the assault conviction was affirmed *Page 1384 
by this Court without published opinion. Hope v. State, 7 Div. 621, January 16, 1979. The murder conviction was reversed. Hopev. State, 378 So.2d 745 (Ala.Cr.App.), cert. denied,378 So.2d 747 (Ala. 1979). On remand, Hope was retried and convicted for murder. That conviction was affirmed on appeal. Hope v. State,397 So.2d 235 (Ala.Cr.App.), cert. denied, Ex parte Hope,397 So.2d 237 (Ala. 1981).
In 1985, Hope filed separate petitions for writs of error coram nobis attacking each conviction. Those petitions were consolidated by the circuit court. Counsel was appointed to represent Hope and an evidentiary hearing was held. The circuit court denied the petitions and found (1) that Hope "was not denied his constitutional right to effective assistance of counsel" in each case, (2) "[t]hat there was no credible evidence which was presented to this Court from which this Court could set aside the jury verdict in this matter and conclude that the Petitioner is innocent of the crime [of assault] of which he was convicted," and (3) that Hope "failed to meet his burden of proof in this matter and the Court finds no ground to grant the relief herein requested." We find that the judgment of the circuit court denying the petitions is due to be affirmed. In stating our reasons for this conclusion, we address each coram nobis petition separately.
 I
Hope alleged that his conviction for assault should be set aside (1) because his trial counsel was ineffective, (2) because of newly discovered evidence that another person actually committed the assault, and (3) because of racial discrimination in the selection of the jury venire.
(A) Ineffective Assistance of Counsel
Attorney John Medaris was appointed to represent Hope in the assault case. The records of this Court show that Hope was represented on appeal by Attorney William T. Harrison, who was retained by Hope's father. Because appellate counsel was different from trial counsel, the alleged ineffectiveness of trial counsel could have been raised as an issue on direct appeal. For purposes of this appeal, it is insignificant that the records of this Court do not show which issues were raised on original appeal. A petition for coram nobis is properly denied either where the issue could have been raised on direct appeal but was not, Carroll v. State, 462 So.2d 789, 780 (Ala.Cr.App. 1984), or where the issue was raised and previously considered. Harris v. State, 291 Ala. 135, 136,279 So.2d 118 (1973); Johnson v. State, 439 So.2d 1340, 1341
(Ala.Cr.App. 1983). Issues which "were dealt with on direct appeal or could have been raised at trial or on direct appeal and were not" are not cognizable in a coram nobis proceeding.Luke v. State, 484 So.2d 531, 532 (Ala.Cr.App. 1985). See alsoEx parte Clisby, 501 So.2d 483, 484 (Ala. 1986).
In order to establish a claim of ineffective assistance of counsel a defendant must prove, first,
 "that counsel's performance was so deficient as to fall below an objective standard of reasonableness. Counsel's conduct must be considered within the context of the facts of the particular case and as of the time of the alleged misconduct. Second, petitioner must show that counsel's deficient performance prejudiced the defense and deprived petitioner of a fair trial. Prejudice is shown when, absent the errors, there is a reasonable probability that the jury would have had a reasonable doubt respecting guilt." Ex parte Baldwin, 456 So.2d 129, 134 (Ala. 1984), affirmed, 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985), applying the test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
A defendant must prove that counsel's incompetence resulted in prejudice.
 "In order to establish ineffective representation, the defendant must prove both incompetence and prejudice. [Strickland v. Washington] 466 U.S., at 688, 104 S.Ct., at 2065. There is a strong presumption that counsel's performance falls within the 'wide range of professional assistance,' id., at 689, 104 S.Ct., at 2065; the defendant bears the burden *Page 1385 
of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. Id., at 688-689, 104 S.Ct., at 2065-2066. The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances and the standard of review is highly deferential. Id., at 689, 104 S.Ct., at 2065. The defendant shows that he was prejudiced by his attorney's ineffectiveness by demonstrating that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' Id., at 694, 104 S.Ct., at 2068. See also, id., at 695, 104 S.Ct., at 2069 (Where a defendant challenges his conviction, he must show that there exists 'a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt'). And, in determining the existence vel non of prejudice, the court 'must consider the totality of the evidence before the judge or jury.' Ibid." Kimmelman v. Morrison, 477 U.S. 365, 106 S.Ct. 2574, 2586-87, 91 L.Ed.2d 305
(1986).
A defendant must show that counsel's unprofessional error resulted in injury.
 "Even assuming, arguendo, that defendant's counsel erred and that this error was professionally unreasonable, that would not in and of itself warrant setting aside the judgment of a criminal proceeding if the error did not affect the judgment. Strickland, supra, 466 U.S. at 691
[104 S.Ct. at 2066]. The defendant must affirmatively prove prejudice; that is, he 'must show that there is a reasonable probability, that but for counsel's unprofessional errors, the result of the proceeding would have been different.' Strickland, supra, 466 U.S. at 694 [104 S.Ct. at 2068]. '[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." ' Strickland, supra, 466 U.S. at 689 [104 S.Ct. at 2065]. Strategic choices made after a thorough investigation of relevant law and facts are virtually unchallengeable and those strategic decisions made after less than complete investigation are 'reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.' Strickland, supra, 466 U.S. at 691
[104 S.Ct. at 2066].
 "In this case, counsel's investigation has not been shown to have been unreasonable, nor has his strategy been shown to have been outside the realm of reasonable assistance of counsel. Yet, even if counsel committed what appears in retrospect to have been a tactical error, that does not automatically mean that petitioner did not receive an adequate defense in the context of the constitutional right to counsel. Summers v. State, 366 So.2d [336] at 341 [Ala.Cr.App. 1978], citing Tillis v. State, 292 Ala. 521, 296 So.2d 892
(1974). 'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.' Strickland, supra, 466 U.S. at 691
[104 S.Ct. at 2066]. '[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.' Strickland, 466 U.S. at 692
[104 S.Ct. at 2067]. Ex parte Lawley, 512 So.2d 1370
(Ala. 1987).
In his petition, Hope alleges that trial counsel was ineffective because he failed to make a motion to exclude the State's evidence, failed to request an affirmative charge, failed to except to the judge's oral charge to the jury, failed to file a motion for new trial, failed to request a ruling on his discovery motions, and failed to properly preserve issues for review on appeal. It is also argued that counsel was ineffective because he failed to request a charge on self-defense.
Our review convinces us that counsel's omissions did not prejudice his client. *Page 1386 
For example, defense counsel's failure to request a judgment of acquittal did not prejudice Hope because the prosecution presented a prima facie case of assault with intent to murder. Counsel is not ineffective for failing to file a motion for which there is "no legal basis." United States v. Caputo,808 F.2d 963, 967 (2nd Cir. 1987).
The transcript of the trial for assault is a part of the record on this coram nobis appeal. The victim, Russell Broom, testified that he felt something hit him on the side of his face, turned around, and saw the defendant with a knife in his hand. Broom's neck had been cut from a point "just below [his] left ear all the way across just below — just above the Adam's Apple." Rhonda Farmer Roper testified that she heard Broom say to Hope, "Please don't cut me anymore." Kathy Vallery testified that she saw Broom holding his neck and Hope holding a knife, that Hope told her not to call the police, that Hope took the telephone receiver away from her during her call to the police, and that Hope told his two companions, "We have got to get out of here." Don House testified that he heard "somebody hollering, Bobby Joe, don't do it"; that Hope had a knife in his hand and "said something like I don't kid around. And Russell said, you cut me."
The defense presented testimony that Broom threatened to "whip [Hope's] ass" and hit Hope in the shoulder with his fist. In response, Hope slapped Broom but did not have a knife and did not cut Broom.
At trial, there was no evidence of self-defense so a requested charge on that principle should have been refused. Hope's defense was, and is, that he did not cut the victim, but that someone else did. "[T]he mere failure to object to evidence and to jury instructions does not render counsel ineffective." Lockett v. Arn, 740 F.2d 407, 412 (6th Cir. 1984), cert. denied, Lockett v. Arn, ___ U.S. ___,106 S.Ct. 3332, 92 L.Ed. 2d 738 (1986).
Hope does not specify what grounds should have been raised in a motion for new trial, what portion of the trial judge's charge to the jury was erroneous and warranted objection, and what issues should have been preserved for appeal. For all these reasons, we concur with the trial judge's finding that Hope did not sustain his burden in proving ineffective assistance of counsel.
"In a coram nobis proceeding, petitioner bears the burden of presenting satisfactory proof of his claim." Ex parte Lawley,512 So.2d 1370 (Ala. 1987). That burden is considerable.
 "In a coram nobis proceeding the petitioner bears the burden of submitting clear, full and satisfactory proof. The degree of proof is 'highly exacting' as to facts and 'always means more than reasonably satisfying' the judge of the truth of his allegations. Summers v. State, 366 So.2d 336, 343 (Ala.Cr.App. 1978), cert. denied, Ex parte Summers, 366 So.2d 346 (Ala. 1979)." Chapman v. State, 412 So.2d 1276, 1277 (Ala.Cr.App. 1982).
"Counsel's competence, however, is presumed, . . . and the defendant must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." Morrison, 477 U.S. at 384, 106 S.Ct. at 2588.
Finally, Hope argues that he was "constructively" denied an "effectively functioning defense counsel because his trial counsel was inexperienced." Hope contends that when he was arraigned on the assault charge an indictment had been returned against him for murder in the first degree, therefore it was "foreseeable" that he "faced the possibility of a life sentence without benefit of parole" as a habitual felony offender under Alabama Code 1975, § 15-22-27.1. Appellant's brief, p. 20. Hope argues that he was entitled to "experienced" counsel because had he been indicted for a capital offense he would have been entitled to "appointed counsel with no less than five years' prior experience in the active practice of criminal law." Alabama Code 1975, § 13A-5-54. Hope's argument is without merit.
The record of the coram nobis hearing does show that, when Attorney Medaris *Page 1387 
represented Hope for assault, he had been licensed to practice law less than one year and that that was his first criminal jury trial. However, Medaris testified that he had prior experience in the field of criminal law because he had clerked for a practicing attorney before he became licensed. At the assault trial, Medaris was assisted by Attorney Mickey Johnson, who had been in practice for two years and had handled other criminal cases.
There exists a presumption that counsel is competent.United States v. Cronic, 466 U.S. 648, 658, 104 S.Ct. 2039,2046, 80 L.Ed.2d 657 (1984). "That conclusion is not undermined by the fact that respondent's lawyer was young, that his principal practice was in real estate, or that this was his first jury trial." Cronic, 466 U.S. at 665, 104 S.Ct. at 2050. Hope has presented insufficient evidence to rebut the presumption of counsel's competency.
 B. Newly Discovered Evidence
We also find that the trial judge's finding that Hope's newly discovered evidence was not credible is supported by the record. Hope had to convince the judge of the truth of his allegations and the judge must "believe" Hope's evidence.Clemmons v. State, 459 So.2d 997, 998 (Ala.Cr.App. 1984). The credibility of witnesses is for the trier of fact, whose finding is conclusive on appeal. This Court cannot pass judgment on the truthfulness or falsity of testimony or on the credibility of witnesses. Collins v. State, 412 So.2d 845, 846
(Ala.Cr.App. 1982).
The record supports the trial judge's finding. Hope's alleged newly discovered evidence was presented through the testimony of Danny Moulds, who admitted that he cut Broom, and Kenneth Henley, who testified that he saw Moulds cut Broom's neck "so fast you couldn't even see it." Both Moulds and Henley were incarcerated in the Alabama Prison System when they met Hope. Both men had convictions for crimes involving moral turpitude.
Moulds was serving a sentence of life without parole for a 1981 conviction for robbery when the victim was intentionally killed. Moulds v. State, 426 So.2d 942 (Ala.Cr.App. 1982). He testified that he had consumed "around 12 to 15 beers" in the seven-hour period immediately prior to the cutting, and that Henley had had "about the same" amount to drink. Moulds testified that he cut Broom "on the right side," which appears to be contrary to the trial testimony of Dr. Samuel Gillis that Broom "had a laceration on his neck which extended just below the left ear to a point just above his Adam's apple."
Kenneth Henley testified that he had convictions for robbery, escape, kidnapping, and assault. See Henley v. State,361 So.2d 1148 (Ala.Cr.App.), cert. denied, Ex parte Henley,361 So.2d 1152 (Ala. 1978) (grand larceny).
Here there is no evidence that the trial judge abused his discretion in denying a new trial on the grounds of newly discovered evidence based on the lack of credibility of the witnesses presenting the new evidence. Williams v. State,489 So.2d 4, 5-6 (Ala.Cr.App. 1986). "One condition of the trial court's granting a new trial on the basis of newly discovered evidence is that the court must believe the evidence presented at the hearing." McDonald v. State, 451 So.2d 440, 442
(Ala.Cr.App. 1984).
Since a coram nobis petition "serves as a motion for a new trial on the ground of newly discovered evidence," Groce v.State, 48 Ala. App. 709, 711, 267 So.2d 499 (1972), there exists a presumption favoring the correctness of the trial court's ruling on a petition for writ of error coram nobis. Brooks v.State, 248 Ala. 628, 631, 29 So.2d 4 (1947). "The granting of a motion for a new trial was addressed to the sound discretion of the trial court and will not be revised on appeal unless it clearly appears that the discretion has been abused." Nicholsv. State, 267 Ala. 217, 228, 100 So.2d 750 (1958). "The trial court is in the best position to determine the credibility of the new evidence." Isom v. State, 497 So.2d 208, 212
(Ala.Cr.App. 1986). "It is basic that in consideration of the sufficiency or insufficiency of the evidence to support the verdict, we cannot weigh the evidence or test the credibility of witnesses." *Page 1388 Walker v. United States, 301 F.2d 94, 95 (5th Cir. 1962). "The credibility of a witness is a question for the jury." Cason v.State, 515 So.2d 721 (Ala.Cr.App.), cert. denied, Ex parteCason, 515 So.2d 725 (Ala. 1987).
 C.
Hope has presented no evidence to support his bare conclusionary allegation of racial discrimination in the selection of the jury. Such a conclusion does not even warrant an evidentiary hearing. Ex parte Clisby, 501 So.2d 483, 486
(Ala. 1986).
 II
In his coram nobis petition attacking his murder conviction, Hope alleges (1) the evidence was insufficient to support his conviction; (2) the existence of newly discovered evidence; (3) the ineffective assistance of counsel; and (4) the remarks of the District Attorney and the conduct of the prosecution denied him a fair trial.
 A.
In Hope v. State, 397 So.2d at 236, this Court held, "At appellant's insistence, we have again considered the evidence in this cause and are of the opinion that the trial court correctly submitted this case to the jury." Since this issue was raised and addressed on direct appeal, it is not a proper issue for coram nobis. Johnson v. State, 439 So.2d 1340
(Ala.Cr.App. 1983).
 B.
Hope's newly discovered evidence is the testimony of former Shelby County Deputy Sheriff Charles Shaw and Maburn Strickland.
At Hope's second murder trial, Paulette Horton testified as a defense witness that, on the night of the murder, Donny Edge told her that he threw Louie Earl in the river. She further testified that she told this to a deputy sheriff, whose identity she could not remember. On cross-examination she admitted that she told someone from the District Attorney's Office that she "could have dreamed it."
Hope testified at the coram nobis hearing that Deputy Shaw would testify that Ms. Horton told him what Edge had told her. His testimony thereby rehabilitates Horton's testimony and refutes her statement that she merely "dreamed" the incident. However, at the coram nobis hearing, Shaw testified that "because it's been so long ago. . . I can't recall any of the conversation."
At the coram nobis hearing, Strickland testified that he had heard Edge admit the killing.
At Hope's murder trial, Ronald Cox testified as a defense witness that he heard Edge say "we just killed a man." Randy Collum also testified that he heard Edge state that "we just drowned Louie Earl Jones."
Consequently, both Shaw's expected testimony and Strickland's testimony were cumulative. The alleged newly discovered evidence only tended to rehabilitate and corroborate Horton's testimony. "The general rule is that newly discovered evidence which goes merely to credibility of witnesses does not authorize a new trial." Blackmon v. State, 46 Ala. App. 274,276, 240 So.2d 696, cert. denied, 286 Ala. 733, 240 So.2d 699
(1970). A new trial should not be granted on the ground of newly discovered evidence where it appears that the evidence is merely cumulative or impeaching. Ex parte Williams, 268 Ala. 535,538, 108 So.2d 454 (1958), cert. denied, Williams v.Alabama, 359 U.S. 1004, 79 S.Ct. 1142, 3 L.Ed.2d 1032 (1959);Taylor v. State, 266 Ala. 618, 620, 97 So.2d 802 (1957);Robinson v. State, 361 So.2d 1172, 1175 (Ala.Cr.App. 1978). "[A]n error of fact which may be used as a basis for a writ of error coram nobis does not consist of new evidence going to the merits of the case" because "it would indefinitely protract litigation, destroy the stability and certainty of judicial proceedings, and open wide the door to perjury and fraud." Exparte Cobern, 274 Ala. 354, 355, 148 So.2d 631 (1963); Divinev. State, 285 Ala. 488, 492-93, 234 So.2d 28 (1970).
 C.
Hope alleges that his retained trial counsel, Hewitt Conwill and Karl C. Harrison, were ineffective because they "failed to *Page 1389 
properly prepare petitioner's case for trial, failed to prepare appropriate pre-trial motions and requests, failed to question, subpoena, and call other other witnesses who might have rendered testimony favorable to petitioner, failed to question and properly prepare petitioner's witnesses for trial, failed to properly cross-examine witnesses called by the State, failed to make timely and appropriate objections during the course of the trial and otherwise failed to render reasonably effective assistance of counsel." This "grocery list" of counsel's alleged failures is totally useless because it represents only legal conclusions unsupported by specific facts. Moore v.State, 502 So.2d 819 (Ala. 1986). "A petition is 'meritorious on its face' only if it contains a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the facts relied upon (as opposed to a general statement concerning the nature and effect of those facts) sufficient to show that the petitioner is entitled to relief if those facts are true." Moore, 502 So.2d at 820.
At the coram nobis hearing, Hope argued that his retained attorneys had a conflict of interests because they also represented his brother Phillip on the same charge. Phillip was convicted of murder in a separate trial. Hope v. State,390 So.2d 1077 (Ala.Cr.App.), cert. denied, Ex parte Hope,390 So.2d 1083 (Ala. 1980). At the hearing, Hope testified that he and his brother "had the same defense" and that he never discovered any evidence which would "implicate [Phillip] and find [Hope] innocent." Attorney Conwill testified that the issue of a potential conflict of interests was discussed with the Hope brothers and that both brothers "said they were absolutely innocent of it and did not want to try to work out 'anything.' " He testified that he was not aware of any circumstances to create a conflict. Hope's allegation that his counsel suffered from a conflict of interests is simply not supported by the record. "[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." Cuyler v. Sullivan, 446 U.S. 335, 351,100 S.Ct. 1708, 1719, 64 L.Ed. 2d 333 (1980).
The allegations that counsel failed to investigate, prepare a defense, and call witnesses are without merit. At the coram nobis hearing, the testimony of Harold Barnette was offered to impeach the trial testimony of Charles Barnette that he overheard Hope state "we got rid of him." Conwill testified that Harold was not subpoenaed to court — "It was done intentionally but it wasn't an oversight, but I don't remember exactly the reason why we did not."
 D.
The allegations concerning the prosecution's improper remarks and conduct contained in the petition were not pursued at the coram nobis hearing or argued on appeal. Therefore, these allegations are considered waived. Additionally, they are not proper grounds for coram nobis because they could have been raised at trial and on direct appeal.
In deciding this case, we have considered and reviewed the records of Hope's underlying convictions (one for assault and one for murder, including both the original trial and the retrial), in addition to the evidence adduced at the evidentiary hearing on the coram nobis petition. That comprehensive review convinces this Court that Hope received fair trials and that his convictions should stand. The record supports the judgment of the circuit court in denying Hope's petitions for writs of error coram nobis. That judgment is affirmed.
AFFIRMED.
All Judges concur.
 *Page 140